HON. BRIAN M. MORRIS

Andrew R. Frisch
MORGAN & MORGAN, P.A.
8151 Peters Road, Suite 4000
Plantation, FL 33324
Email: afrisch@forthepeople.com
Phone: 954-WORKERS
Fax: 954-327-3013
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA

| | |
|---|---|
| JULIA CARTAGENA, ARIELLE HARTFORD, CHRISTINA HARRIS, NATHAN FOX and CLYDE FOX, Individually and For Others Similarly Situated. | ) ) ) ) ) ) Case No.: 2:23-cv-00029-BMM |
| Plaintiffs, v. | ) ) ) **UNOPPOSED MOTION FOR FLSA SETTLEMENT APPROVAL** |
| BEST PRACTICE MEDICINE, LLC | ) ) ) ) |
| Defendant. | ) ) ) |

### JOINT MOTION FOR FLSA SETTLEMENT APPROVAL

**A. INTRODUCTION AND SUMMARY**

Plaintiffs, Julia Cartagena, Arielle Hartford, Christina Harris, and Clyde Jenkins ("Collective Representatives"), respectfully move this Court for approval of the Fair Labor Standards Act ("FLSA") collective action settlement ("Settlement") reached

MOTION TO APPROVE FLSA SETTLEMENT - 1

FPDOCS 35081761.1

between Plaintiffs, individually and for others similarly situated[1] ("Plaintiffs") and Defendant, Best Practice Medicine, LLC ("BPM" or "Defendant"). The Settlement was the result of arm's-length negotiations conducted by experienced counsel for all Parties after exchanging information over the course of over a year. The terms of the Settlement are reasonable, appropriate, and fair to all Parties and individuals involved.

The Parties' Settlement covers individuals who: (1) were employed by BPM; (2) were paid "day rates"; (3) worked in excess of forty (40) hours per week in one or more workweeks; and (4) who opted into this collective action, by filing their Consent to Join with the Court. All Plaintiffs who meet all four (4) of the above criteria will receive multiple checks under the terms of the Parties' Settlement Agreement.

If the Settlement is approved, the Plaintiffs will receive a notice explaining the nature, terms and scope of the Settlement, along with a series of negotiable checks representing the amount of compensation they are due based on the Settlement. A third-party settlement administrator ("Administrator") agreed to by the parties will send the checks reflecting each Plaintiff's pro rata portion of the settlement. All eligible Plaintiffs will receive their checks in the mail.

---

[1] In addition to the 5 named-Plaintiffs, 44 additional Plaintiffs opted in to the case by filing their consent to joins with the Court. *See* Docket generally.

MOTION TO APPROVE FLSA SETTLEMENT - 2

As shown below, the Parties' Settlement is a fair and reasonable resolution to a *bona fide* dispute between the Parties regarding the manner in which Plaintiffs were paid under the FLSA. The Parties respectfully move the Court to approve the Settlement and permit the Parties to effectuate its terms using the forms and procedures set forth in their Agreement. The Parties also ask, consistent with the Parties' settlement, that the Court appoint ILYM Group as the third-party Administrator. Further, the Parties seek Court approval of the following payments: (1) a Service Award to each of the Named-Plaintiffs, Julia Cartagena, Arielle Hartford, Christina Harris, and Clyde Jenkins, in the amount of $5,000; (2) Attorneys' Fees equal to thirty-three percent (33.3%) of the Settlement; (3) reasonable litigation costs; and (4) settlement administration fees to the Administrator in an amount of $5,985.60. Finally, the Parties ask that the Court retain jurisdiction over this matter, brought by Plaintiffs on behalf of themselves and all others similarly situated, until all payments required pursuant to the Settlement are made.

## B. FACTUAL AND PROCEDURAL BACKGROUND

On May 11, 2022, Julia Cartagena filed this Action on behalf of herself and others similarly situated, alleging that BPM violated the Fair Labor Standards Act

MOTION TO APPROVE FLSA SETTLEMENT - 3

(FLSA), 29 U.S.C. § 201, *et seq.*, and federal tax law 26 U.S.C. § 7434, by virtue of inaccurate reporting of wages. Doc. 1.[2]

Plaintiffs allege that BPM failed to pay them overtime as required by the FLSA, and inaccurately (over)reported their wages to the IRS. *Id.* Plaintiffs claim that BPM paid them day rates, with no additional premium pay when they worked in excess of 40 hours per week. *Id.* Plaintiffs further allege they and the similarly situated traveling paramedics regularly worked more 40 hours in individual work weeks without receiving any overtime wages for the hours they worked in excess of 40 hours in violation of the FLSA. *Id.* BPM has at all relevant times, disputed that it violated any law. Although BPM acknowledges that it initially failed to pay Plaintiffs proper overtime, it asserts that its current pay practices are fully compliant with applicable law.

Both parties conducted extensive informal discovery regarding the claims and defenses at issue, and damages. In late 2023, the Parties agreed to engage in settlement discussions and schedule mediation. Throughout the remainder of 2023 and early 2024, the Parties continued to devote their resources to gathering the data and information necessary to mediate in good faith.

---

[2] Plaintiffs subsequently filed their Amended Complaint on June 20, 2023, to comply with the Court's Order requiring them to list all opt-in plaintiffs then in the case as named-Plaintiffs.

MOTION TO APPROVE FLSA SETTLEMENT - 4

On May 21, 2024, the Parties mediated with experienced wage-and-hour mediator Todd McNamara in Denver, Colorado in a full-day session. *See* https://www.mediation.com/memberprofile/todd-j-mcnamara-80218-16.aspx. The initial mediation resulted in an impasse, but the Parties agreed to reconvene after exchanging additional discovery. Thereafter, the Parties attended a second mediation on August 1, 2024, via zoom, with Todd McNamara, which resulted in a settlement. After reaching a settlement in principle at mediation, the Parties engaged in prolonged negotiations relating to the specific terms of the Agreement, exchanging numerous drafts of the same, working through various issues before ultimately finalizing the Settlement in late October 2024. If approved by this Court, the Agreement will resolve this matter in its entirety.

**C. SUMMARY OF SETTLEMENT TERMS.**

1. <u>The terms pertaining to compensation and the release of claims are reasonable and should be approved</u>

The proposed settlement obligates BPM to pay a maximum settlement amount to settle the claims in this Action ("Gross Settlement Amount") by issuing checks to the Settlement Class Members. *See* Exhibit 1. The Gross Settlement Amount covers all wage and hour claims (including related claims for attorneys' fees and costs), the tax misreporting claims, settlement administrative costs, and service awards for the representative Plaintiffs. The "Net Settlement Amount" represents the settlement

proceeds that remain after these identified deductions are taken from the Gross Settlement Award.

The Net Settlement Amount will be divided among the Settlement Class Members on a pro rata basis based on each individual Class Members' compensation received and overtime hours worked on behalf of BPM during the relevant time period. In exchange for these monetary awards and the other consideration detailed in the Parties' Settlement Agreement, Plaintiffs will release BPM from the following: all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees for alleged unpaid wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or any other compensation and relief arising under the FLSA state wage laws applicable to the work performed for BPM during the relevant period, and any claims related to alleged misreporting of wages to the IRS.

   2. The Settlement Administration and Distribution Provisions Are Fair and Reasonable, and Should be Approved

Under the Settlement Agreement's terms, the claims administrator will make final allocations to each Plaintiff and be responsible for making the payments to each Plaintiff. One-half of the settlement awards payable to each Eligible Class Member shall be deemed payment of alleged unpaid wages, subject to appropriate payroll

MOTION TO APPROVE FLSA SETTLEMENT - 6

withholdings, and reported on an Internal Revenue Services ("IRS") Form W-2. The remaining half of the settlement awards shall be deemed compensation for alleged liquidated damages under the FLSA, shall not be subject to withholding for payroll taxes, and shall be reported on an IRS Form 1099. Likewise, any service awards will be reported on an IRS Form 1099.

### D. THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT.

The Parties only seek approval of a collective action settlement. The Court must determine if the settlement is "fair, adequate, and reasonable." *See Harris v. Vector Mktg. Corp.*, 2012 WL 381202, *2 – *4 (N.D. Cal. Feb. 6, 2012) (granting final approval of Rule 23 class and FLSA collective action settlement, finding settlement to be "fair, adequate, and reasonable"). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) ("MCL 4th") § 21.61, at 480 (2010).

There is a "strong judicial policy that favors settlements" and an "overriding public interest in settling and quieting litigation" particularly where FLSA collective and class action litigation is concerned. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1278 (9th Cir. 1992) (reversal of settlement approval only upon clear showing of abuse of discretion): *Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest

MOTION TO APPROVE FLSA SETTLEMENT - 7

in containing the burdens of expensive class-action litigation favors settlement). Indeed, the Ninth Circuit "has long deferred to the private consensual decision of the parties" regarding the amount of settlement and "put[s] a good deal of stock in the product of an arms-length non-collusive negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Where the litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation, and where it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)).

The Court should thus perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.*

MOTION TO APPROVE FLSA SETTLEMENT - 8

1.  <u>A Bona Fide Dispute Exists Between the Parties.</u>

As a threshold matter, the Court should conclude that the Parties' Settlement represents a resolution of a bona fide dispute. The Parties have identified several areas in dispute. If litigation were to continue, BPM likely would have moved to decertify the collective action, which Plaintiffs would have opposed. Furthermore, the parties dispute the central merits issues of the case including: (1) whether the Plaintiffs performed any overtime for which BPM did not already pay them; (2) the amount of unpaid overtime, if any; and (3) whether any violation of the FLSA was made in good faith; and (4) whether any violation of the FLSA was willful. "These disputes show that bona fide issues persist as to the amount of wages, if any, still owed to the plaintiffs, and that the proposed settlement 'reflects a reasonable compromise over issues that are actually in dispute… rather than a waiver of statutory rights.'" *See, Lee v. The Timberland Co.*, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008), at *2 (bona fide issues include challenge to defendant's exemption classification of employees and amount of overtime worked).

2.  <u>The Settlement is Fair and Reasonable.</u>

There is a "strong presumption in favor of finding a settlement fair." *Velez v. Audio Excellence, Inc.*, 2011 WL 4460110, at *1 (M.D. Fla. Sept. 21, 2011) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Furthermore, four relevant considerations confirm that this settlement, which arises out of a threatened action

MOTION TO APPROVE FLSA SETTLEMENT - 9

for overtime wages and provides substantial compensation to the opt-in plaintiffs, is fair and reasonable. First, the "Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 725 (E.D. La. 2008). There is no evidence of collusion here. The parties engaged in discovery and participated in arms-length and good-faith settlement negotiations, including two mediation sessions with a respected mediator. The final settlement amount was accepted by both parties after engaging in extensive negotiations including two full-day mediation sessions. *See, e.g., Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is noncollusive."). Second, if litigation were to continue, the parties would likely expend significant resources due to the complexity and likely duration of the litigation. The Parties worked to resolve various complex, disputed issues, such as issues regarding conditional certification, numerous discovery disputes, tolling, and damage calculations. If this case was not contemporaneously settled, there would undoubtedly be extensive future work to come, including dispositive motions, depositions, associated discovery disputes including possible subpoenas to a substantial number of third-parties, questions regarding applicability of the FLSA, good faith, willfulness, decertification, pretrial motions, trial, and potential appellate issues. Continued litigation would decrease the settlement funds available to putative

MOTION TO APPROVE FLSA SETTLEMENT - 10

class members. *See Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.") (quotation omitted). Third, the parties engaged in informal discovery prior to engaging in mediation to determine the reasonableness of the settlement. BPM provided Plaintiffs' Counsel with detailed payroll information for all Plaintiffs. The Parties therefore entered mediation well informed and prepared to properly resolve the claims involved. Fourth, Plaintiffs were represented by counsel experienced in handling wage and hour class and collective actions, including actions involving the straight time for overtime pay practice at issue. Plaintiffs' Counsel has the experience to assess the risks of continued litigation and benefits of settlement. BPM's counsel is likewise experienced in defending similar wage and hour claims. Counsel for both parties have advised their respective clients regarding the settlement and have recommended judicial approval thereof. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quotation omitted). Accordingly, the Parties engaged in significant work, recognized and appreciated the risks in proceeding if this case were not settled, and (Plaintiffs in particular) recognized that their settlement represented a compromise of the range and uncertainty of their damages.

MOTION TO APPROVE FLSA SETTLEMENT - 11

**E. THE SERVICE AWARD SHOULD BE APPROVED.**

The Parties' agreed settlement contemplates providing a service award to each of the Named Plaintiffs of $5,000.00, to acknowledge their time, effort, and risk expended in helping to achieve a successful Settlement on behalf of all Plaintiffs. This payment shall issue along with a Form 1099.

The service award is less than 1% of the gross settlement amount and is well within the range of normal for the Ninth Circuit. *See Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016) (approving 11%); *Quintana v. HealthPlanOne LLC*, No. CV-18-02169-PHX-RM, 2019 WL 3342339, at *2 (D. Ariz. July 25, 2019) (approving 6.7%).

**F. THE ATTORNEYS' FEES SHOULD BE APPROVED.**

    1. <u>The Fee Award Should be Calculated as a Percentage of the Common Fund.</u>

Where counsel seek fees from a common fund, courts have discretion to use one of two methods to determine whether the request is reasonable: "percentage-of-the-fund" or "lodestar/multiplier." *Id.* at 963–64; *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

MOTION TO APPROVE FLSA SETTLEMENT - 12

Under either method, the attorneys' fees are reasonable. The fairest way – and the way that best promotes efficiency in litigation – to calculate a reasonable fee when contingency fee litigation has produced a common fund is by awarding Collective Counsel a percentage of the total fund. *See, e.g., Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. Cal. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

The percentage of the fund method is appropriate for several reasons. The percentage method comports with the legal marketplace, where plaintiffs' counsel's success is frequently measured in terms of the results they have achieved. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases, "the monetary amount of the victory is often the true measure of [counsel's] success"). By assessing the amount of the fee in terms of the amount of the benefit conferred on the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result oriented." *Id.* (internal quotations and citations omitted).

2.  The Court Should Award Class Counsel 33.3% of the Common Fund.

The Ninth Circuit has endorsed the percentage of the fund method for calculating attorneys' fees in smaller cases like the instant one. *Cicero v. DirectTV, Inc.*

MOTION TO APPROVE FLSA SETTLEMENT - 13

No. 07-cv1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010), citing *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1127 (C.D. Cal. 2008) (holding attorneys' fees for large fund cases are typically 25% or under while cases below $10 million are often more than the 25% benchmark). In fact, 30-50% is commonly awarded in cases in which the common fund is relatively small. *Id.*; *see also Barbosa v Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. July 2, 2013) (approving 33% of $1,290,000 settlement fund in unpaid wage class action). In common fund settlements of less than $50 million, such as this one, a higher percentage is often awarded. *See, e.g., In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

Indeed, courts throughout the country routinely approve settlements that includes an agreed upon fee equal to 40% of the common fund. *See e.g., Whitaker v. BHP Billiton Petroleum (Americas) Inc.*, No. 4:17-cv-02698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019) (approving settlement agreement and 40% attorneys' fees); *Whitlow v. Crescent Consulting, LLC*, No. 5:16-cv-01330, at ECF No. 189 (W.D. Okla. April 1, 2019) (approving settlement and 40% attorneys' fees); *Jones v. Bison Drilling and Field Services, LLC*, No. 7:17-cv-00167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) (approving 40% fee in settlement); *Brite v. Great Plains Analytical Services, Inc.*, No. 7:18-cv-00153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019) (approving 40% fee in FLSA settlement); *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), adopted, 2018 WL 2193030 (E.D. Tex.

MOTION TO APPROVE FLSA SETTLEMENT - 14

May 11, 2018) (same); *Sarabia v. Spitzer Industries, Inc.*, No. 4:17-cv-02092, at ECF No. 32 (S.D. Tex. May 24, 2018) (same); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *see also Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%); *Winingear v. City of Norfolk, Va.*, No. 2:12CV560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (awarding 38.44% ($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement and noting that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"). *Salinas v. U.S. Xpress Enterprises, Inc.*, No. 113CV00245TRMSKL, 2018 WL 1477127, at *7 (E.D. Tenn. Mar. 8, 2018), adopted, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018) (awarding 40% of the fund in an FLSA action); *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding nearly 52 percent of the total recovery from Defendants as fees) ($235k plus costs on $455k fund).

Here, the requested 33.3% fee is also reasonable given the lodestar cross-check. As Class Counsel put in significant work. Exhibit 2, Frisch Decl. ¶¶20-21. Class Counsel expended over two hundred (200) hours in litigating this matter. Ex. 2, ¶21 This amount does not include paralegal, clerk, and assistants' fees. *Id.* This also assumed that all correspondence was labeled as .1 of an hour. *Id.*

MOTION TO APPROVE FLSA SETTLEMENT - 15

The one-third attorneys' fees is further supported by the results obtained and the uncertainty and complexity of the litigation. Net of attorneys' fees and costs all Plaintiffs will receive a pro rata portion of their settlement, in an amount that exceeds the amount of unpaid overtime wages that Plaintiffs' counsel calculated in a "best case scenario." This is an excellent result. *Id.* The gross recovery for Plaintiffs and the collective class is 168% of their back wages. *Id.* The net recovery will be approximately 103 % of their back wages after attorneys' fees and costs. *Id.* This number will not be reduced by attorneys' fees or costs. *Id.* The proposed method of allocation (individual payments proportionate to their claimed damages) is fair to all. *Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); *In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to

MOTION TO APPROVE FLSA SETTLEMENT - 16

12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages."). The recovery by the Settlement Class Members is well within the normal range for settlements of this nature which have been approved by courts nationwide.

The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014).

### G. CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Parties' Settlement Agreement and approve: (1) a Service Award to each of the Collective Representative/Named Plaintiffs in the amount of $5,000; (2) Attorneys' Fees equal to one-third (33.3%) of the Settlement; (3) reasonable litigation costs; and (4) settlement administration fees to the Administrator in an amount of $5,985.60. Finally, the Parties request that the Court retain jurisdiction until all

MOTION TO APPROVE FLSA SETTLEMENT - 17

payments due under the Settlement Agreement are paid. A proposed Order approving this Motion is attached hereto as Exhibit 3.

DATED this 23rd day of December 2024.

MORGAN & MORGAN, P.A.

*/s/ Timothy C. Fox*
Timothy C. Fox
MORGAN & MORGAN, P.A.
5 W Mendenhall Strett, Suite 235
Bozeman, MT 59715
Email: tfox@forthepeople.com
Phone: (406) 602-6300

*/s/ Andrew R. Frisch*
Andrew R. Frisch
MORGAN & MORGAN, P.A.
8151 Peters Road, Suite 4000
Plantation, FL 33324
Email: afrisch@forthepeople.com
Phone: 954-WORKERS

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the forgoing with the Clerk of the Court CM/ECF system which will send notice to the following counsel of record.

*/s/ Andrew R. Frisch*
Andrew R. Frisch

MOTION TO APPROVE FLSA SETTLEMENT - 18

FPDOCS 35081761.1